John A. Towers, Petitioner-Appellant, v. B. H. Schull, Director of Department of Mines and Minerals of State of Illinois, Respondent-Appellee.

Gen. No. 9,952.

Opinion filed October 19, 1954. Released for publication November 4, 1954.

WANLESS, CRAVEN & GIFFIN, of Springfield, for appellant; JAMES C. CRAVEN, of Springfield, of counsel.

LATHAM CASTLE, Attorney General of State of Illinois, for appellee; JOHN L. DAVIDSON, JR., LEE D. MARTIN, and MARK O. ROBERTS, Assistant Attorneys General, of counsel.

MR. JUSTICE HIBBS delivered the opinion of the court.

John A. Towers, petitioner, was appointed a state mine inspector in 1948. On August 25, 1953 respondent B. H. Schull, Director of the Department of Mines and Minerals of the State of Illinois filed with the Mining Board of which, by statute, he is a member, a statement charging petitioner with certain alleged violations of the Coal Mining Act and departmental regulations, which statement was served on petitioner. On September 15, 1953, respondent, by letter, discharged petitioner and on September 18 petitioner replied asking for a hearing before the Mining Board. On September 23 petitioner was notified by letter that he might appear before that Board on October 8. On October 5 petitioner was notified that the Board meeting had been postponed until October 26, 1953.

On October 7, 1953 petitioner filed a petition in the circuit court of Sangamon county for a common-law writ of certiorari to review and reverse respondent's order of dismissal, and on the same day, by order of that court the writ issued directing respondent to certify to the court a record of the proceedings in the matter before October 21st. On October 14 respondent filed a motion to quash the writ together with a return to the writ which set forth a record of all relevant matters in the case. Petitioner thereupon filed his motion to quash the return. On October 26, 1953 the circuit court denied petitioner's motion and sustained respondent's motion. Petitioner has appealed to this court.

State mine inspectors are appointed by the Mining Board for an indefinite term. (Ill. Rev. Stats. 1953, ch. 93, par. 4.03 [Jones Ill. Stats. Ann. 82.204(3)].) The statute also provides that they may be removed by proceedings initiated by aggrieved miners or mine operators (Ill. Rev. Stats. 1953, ch. 93, par. 4.24 [Jones Ill. Stats. Ann. 82.204(24)]) and plaintiff contends that this method is exclusive. We do not agree.

It has been held that "where an office is filled by appointment and a definite term is not fixed by constitutional or statutory provision the office is held at the pleasure of the appointing power and the incumbent may be removed at any time." *Quernheim v. Asselmeier,* 296 Ill. 494, at p. 498, 129 N. E. 828; *Morgan v. County of Du Page,* 371 Ill. 53, 20 N.E.2d 40; *Anderson v. City of Jacksonville,* 380 Ill. 44, 41 N.E.2d 956; *People v. City of Chicago,* 374 Ill. 157, 28 N.E.2d 93. See also Corpus Juris Secundum, Vol. 67, p. 244. If paragraph 4.24 was the only method of removing a mine inspector it would mean that he would be removable only for causes obvious to miners or mine operators. It would be impossible for the Mining Board or its executive director, charged with the responsibility of

361

enforcing the rules and regulations of such board adopted under legislative authority, to remove an inspector for violation of the Mining Act or such regulations. We do not believe the legislature intended this result.

The history of the Mining Act supports this interpretation and shows that the present intent of the legislature was not to restrict the power of the Mining Board to discharge its employees.

Section 14 of an Act entitled, "An act to revise the laws in relation to coal mines and subjects relating thereto, and providing for the health and safety of persons employed therein," in force July 1, 1899 (Session Laws 1899, p. 300) provided: "Upon a petition signed by not less than three coal operators, or ten coal miners, setting forth that any State Inspector of Mines neglects his duties, or that he is incompetent, or that he is guilty of malfeasance in office, or guilty of any act tending to the injury of miners or operators of mines, it will be lawful for the commissioners of labor of this State to issue a citation to the said inspector to appear, at not less than fifteen days' notice on a day fixed, before them, when the said commissioners shall proceed to inquire into and investigate the allegations of the petitioners; and if the said commissioners find that the said inspector is neglectful of his duty, or that he is incompetent to perform the duties of said office, or that he is guilty of malfeasance in office, or guilty of any act tending to the injury of miners or operators of mines, the said commissioners shall declare the office of inspector of the said district vacant, and a properly qualified person shall be duly appointed, in the manner provided for in this act, to fill said vacancy."

In 1911 the Act was revised, and the above section with minor changes not here important, appeared as sec. 3(h) of ch. 93, Hurd's Revised Statutes 1912.

As of July 1, 1949, sec. 3(h) read as follows: "Upon a petition signed by not less than three coal operators, or ten coal miners, setting forth that any state inspector of mines neglects his duties, or that he is incompetent, or that he is guilty of malfeasance, or guilty of any act tending to the unlawful injury of miners or operators of mines, it shall be the duty of the Department to issue a citation to the inspector to appear before it within a period of fifteen days on a day fixed for said hearing, when the Department shall investigate the allegations of the petitioners; and if the Department shall find that the inspector is neglectful of his duty or is incompetent or that he is guilty of malfeasance or guilty of any act tending to the injury of miners or operators of mines, the Department shall declare the position of said inspector vacant, and a properly qualified person shall be duly appointed, in the manner provided for in this Act, to fill said vacancy." (Ill. Rev. Stats., ch. 93, par. 3(h).)

In 1951 the legislature again amended this section to provide as follows: "Upon a petition signed by not less than three coal operators or ten coal miners, or by the Department, charging any state inspector of mines with neglect of duty, incompetency, malfeasance or guilt of any act tending to the unlawful injury of miners or operators of mines, it shall be the duty of the Department to hold a public hearing within 15 days to determine the validity of charges. The inspector shall be given notice of the hearing and shall have the right to counsel and to call witnesses on his own behalf at the hearing. If the Department shall find that the inspector is neglectful of his duty, incompetent, guilty of malfeasance or guilty of any act tending to the injury of miners or operators of mines, the Department shall declare the position of the inspector vacant, and a properly qualified person shall be duly appointed, in

363

the manner provided for in this Act, to fill the vacancy. Inspectors shall be removed only in accordance with the provisions of this subsection." (Ill. Rev. Stats. 1951, ch. 93, par. 3(h).)

The 1951 amendment made a substantial change in this subsection. For the first time the Department of Mines and Minerals was required to file a petition to set in motion a proceeding to remove a state inspector of mines.

The legislature by an act effective July 1, 1953 passed the present Act known and cited as "The Coal Mining Act" and repealed the prior legislation on that subject (secs. 1.01 to 37.05, ch. 93, Ill. Rev. Stats. 1953 [Jones Ill. Stats. Ann. 82.201(1)–82.237(5)]).

Section 4.24 thereof, in effect at the time of petitioner's discharge, provides: "Upon a petition signed by not less than three coal operators, or 10 coal miners, setting forth that any State Mine Inspector neglects his duties, or that he is incompetent, or that he is guilty of malfeasance, or guilty of any act tending to the unlawful injury of miners or operators of mines, the Mining Board shall issue a citation to the State Mine Inspector to appear before it within a period of 15 days on a day fixed for a hearing, when the Mining Board shall investigate the allegations of the petitioners. If the Mining Board finds that the State Mine Inspector has neglected his duty or is incompetent or that he is guilty of malfeasance or guilty of any act tending to the injury of miners or operators of mines, the Mining Board shall declare the position of said State Mine Inspector vacant, and a properly qualified person shall be duly appointed, in the manner provided for in this Act, to fill the vacancy."

■ This Act has removed the limitation placed upon the Mining Board to discharge a State Mine Inspector expressed in the 1951 amendment.

364

■ Where, by amendment or revision, words are stricken from a statute it must be concluded that the legislature deliberately intended to change the law (*McLaughlin v. People*, 403 Ill. 493, 87 N.E.2d 637; *Houghton Mifflin Co. v. Continental Illinois Nat. Bank & Trust Co. of Chicago*, 293 Ill. App. 423, 12 N.E.2d 714).

■ We therefore hold that the legislature by paragraph 4.24 of the 1953 Act intended that the Mining Board should have the power to discharge inspectors in the manner recognized by the Supreme Court in *Quernheim v. Asselmeier, supra* and periodically reaffirmed by that court since that time.

■ Petitioner here was discharged, however, by the Director of Mines and Minerals rather than the Mining Board pursuant to a ruling of the Board dated September 8, 1953. The minutes of a meeting of the Board on that date provide: "The duties of the Mining Board and the Executive Officer, as provided in the Mining Act, were discussed at considerable length. It was the ruling of the Mining Board that it is incumbent upon the Executive Officer to take whatever action he deems expedient at the time in any emergency that may arise of any kind or character, or in the case any employee of the Department of Mines and Minerals who does not fully co-operate with the Mining Act or the Rules and Regulations prescribed by the Executive Officer (Director of the Department of Mines and Minerals). The Executive Officer shall report his actions to the Mining Board, and in the case of a discharged employee the Mining Board, if it so desires, may give to such employee the right to appeal his or her case to the Board."

It should be noted at the outset that this regulation is not as petitioner contends one that must be filed with the Secretary of State pursuant to the terms of Illinois

Revised Statutes 1953, ch. 127, par. 265 [Jones Ill. Stats. Ann. 126.511], being sec. 3 of an Act entitled, "An Act concerning administrative rules." It is a regulation concerned only with the internal management of the Department of Mines and Minerals and does not affect "the rights of, or procedures available to the public . . . ." As such, it is expressly exempted from the provisions of the statute in question. (Ill. Rev. Stats. 1953, ch. 127, par. 264, sec. 2 of said Act [Jones Ill. Stats. Ann. 126.510].)

██ Petitioner has also challenged this regulation on the ground that the Mining Board had no power to delegate the authority to discharge mine inspectors to the Director of Mines and Minerals. Section 2.08 of The Coal Mining Act [Ill. Rev. Stats. 1953, ch. 93, § 2.08; Jones Ill. Stats. Ann. 82.202(8)] provides: "The Director of Mines and Minerals shall be the executive officer of the Mining Board and shall execute the orders, rules and regulations made and promulgated by the Mining Board." We believe that this provision is sufficient to justify delegation to the Director of the power to discharge mine inspectors for violations of the Mining Act. It is not necessary for us to decide in this case whether he may be empowered to discharge inspectors for violations of his own rules and regulations as provided in the regulation since petitioner was charged in part, with violations of The Coal Mining Act in the statement filed by the Director with the Mining Board before petitioner's discharge, which statement was a part of petitioner's petition for writ of certiorari.

██ This court recognizes the familiar canon of statutory construction which compels us, if possible, to avoid construing a statute in a manner which would make its administration impossible (*Illinois Coal Operators Mutual Employers Liability Ins. Co. v. Chicago, Wilmington & Vermilion Coal Co.*, 217 Ill. App.

625). The Mining Act was enacted for the protection and safety of miners, mine operators and the public and it must always be construed in that light. Broad authority is given the Mining Board but the Director of Mines and Minerals is designated its Executive Officer (Ill. Rev. Stat. 1953, ch. 93, par. 2.08 [Jones Ill. Stats. Ann. 82.202(8)]). He is a full-time employee while the Mining Board meets annually on the second Tuesday in September and periodically throughout the year either at regular meetings or special meetings called in accordance with provisions of the statute (Ill. Rev. Stat. 1953, ch. 93, pars. 2.04, 2.09 [Jones Ill. Stats. Ann. 82.202(4), 82.202(9)]). It is apparent that the Mining Board at its meeting of September 8, 1953 attempted, as was its duty, to provide for the day to day administration of the statute. It justifiably determined that the discharge of incompetent or disobedient mine inspectors was a matter of grave concern demanding immediate action. It therefore delegated to the Director of Mines and Minerals the power to take this action. While cases of injustice may arise under this procedure, provision was made by the Board for a review of the Director's action and the correction of ill-advised or erroneous decision on his part. In the present case petitioner did not avail himself of the hearing offered him by the Board but chose instead to challenge the authority of the Mining Board in the circuit court of Sangamon county.

 We believe the Mining Board acted within the authority granted it by the Mining Act and in accordance with the intent of the legislature by delegating to respondent the power to discharge mine inspectors for violations of the statute or its rules and regulations. The judgment of the circuit court of Sangamon county is therefore affirmed.

*Judgment affirmed.*